UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GARY M. TOAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:06cv68 |
| | ) | |
| VERIZON, | ) | |
| | ) | |
| Defendant. | ) | |

AMENDED OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant,

GTE North Incorporated a/k/a Verizon North, Inc.[1] (hereinafter "Verizon"), on October 27,

2006.  The plaintiff, Gary M. Toam, Jr. ("Toam"), filed his response on November 21, 2006, to

which Verizon replied on December 11, 2006.

On December 8, 2006, Verizon filed a motion to strike portions of Toam's deposition,  a

motion to strike portions of Toam's affidavit  and a motion to strike hearsay statements.  Toam

responded to the motions to strike on December 15, 2006, to whichVerizon replied on December

22, 2006.

For the following reasons, Verizon's motion for summary judgment and Verizon's

motions to strike will be granted.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

[1]  Verizon was named as the sole defendant in the complaint.   In an order dated May 3,
2006, due to a stipulation by the parties, "GTE North Incorporated a/k/a Verizon North Inc" was
substituted for defendant Verizon. The parties have continued to refer to the defendant as simply
"Verizon" and the court will do likewise.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a

genuine issue of material fact, <u>Celotex</u>, 477 U.S. at 323.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  <u>Goka v. Bobbitt</u>, 862 F.2d 646, 649 (7th Cir. 1988); <u>Guenin v. Sendra Corp.</u>, 700 F. Supp. 973, 974 (N.D. Ind. 1988); <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir.), <u>cert. denied</u>, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist.  In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated.  <u>See</u>, <u>Waldridge v. American Hoechst Corp. et al.</u>, 24 F.3d 918 (7th Cir. 1994).  In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses.  <u>Anderson</u>, 477 U.S. at 249-251, 106 S.Ct. at 2511.  Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion.  L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  <u>Anderson</u>, 477 U.S. at 248.  Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute.  <u>Id</u>.  The issue of

3

fact must be genuine. Fed. R. Civ. P. 56(c), (e).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagree-ment to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

Toam has brought suit against Verizon for disability discrimination under the Americans with Disabilities Act ("ADA"), alleging that Verizon "regarded" him as disabled.  Toam has also brought a claim for breach of contract based upon Verizon's withdrawal of a conditional offer of employment for a cable splicer position, which Verizon sent to Toam in March of 2005.

In support of its motion for summary judgment, Verizon has set forth the following basic facts, which are not disputed.

Toam applied for a "term" cable splicer position with Verizon on February 24, 2005. (*See* Pl. Dep. at 31:10-32:18).  The following are the relevant job duties of term cable splicer position for which Toam applied:

• Loads necessary tools, material and equipment on Company vehicles and

4

drives to work locations;

• Connects and rearranges cable facilities associated with aerial, buried,

underground and in office buildings according to engineering design by

utilizing hand tools and specialized equipment;

• Works with open flame and hot liquids such as molten lead to make airtight

closures on cable sleeves;

• Climbs poles; works aloft on platforms or in vehicle-mounted buckets; enters

tunnels, buildings, trenches, splice pits, cable vaults and manholes;

• Operates power equipment such as pumps, compressors, blowers, backhoes

and trenchers;

• Works long hours during cutovers, emergency conditions or in inclement

weather. Work may be performed aloft in winter or at night, also in dirty,

damp manholes often in awkward positions. . . .;

(*See* Defendant's Exhibit 1, Job Description, Pl. Dep. Ex. A); (Id., Pl. Dep. at 29:12-31:5.).

Furthermore the following were listed as "Basic Qualifications" for the position:

• Requires climbing poles/ladders up to 60 feet;

• Requires frequent lifting up to 75 pounds; occasional lifting up to 150 pounds;

• Frequent reaching or moving of heavy objects by shoving or pulling with arms

and hands;

• May require frequent stooping and crawling in restricted area, including

vaults;

• Requires prolonged standing and off-balanced positioning while working

5

aloft;

( Pl. Dep. at Ex. A.) Toam was aware of these job duties and basic

qualifications when he decided to apply for the position. (Pl. Dep. at 29:12-18.)

During the two-week period following his application, Toam took and passed a series

of three tests that were designed to determine his ability to perform the essential responsibilities

of term cable splicers. The first two tests were written tests aimed at determining Toam's basic

skills and, specifically, his knowledge of electronics. (Pl. Dep. at 35:1-36:1.)

The third "test" was an interview in which Verizon officials asked Toam about his on the job

experience relating to cable splicing, (Pl. Dep. at 39:1-6), which included over 10

years of work generally performing the same duties, using the same skills, and meeting the same

physical demands as posed by Verizon's term cable splicer position. ( Pl. Dep. at

40:19-42:1); (*id.*, Pl. Dep. Ex. B at 2.) All of these "tests" were conducted on a pass or fail basis.

(*See id.* at 34:23-35:9; 35:25-36:14; 37:12-14; 39:7-12); (Buschman Aff. at ¶ 3).

On March 6, 2005, after Toam had passed all three tests, Verizon sent Toam a

conditional offer letter (the "Offer Letter"). ( Buschman Aff. at ¶¶ 4-5 and Ex. A

thereto); (Pl. Dep. at 44:1-17 and Ex. C thereto.) In the Offer Letter, Verizon offered

Toam the position of "Term (up to 36 months) Cable Splicer" and requested Toam to report

to work on March 14, 2005. (Offer Letter, Pl. Dep. Ex. C) However, the Offer

Letter explicitly stated that it was a "conditional offer" and, under the "conditions of th[e] offer,"

 Toam's offer was, among other things, contingent upon  Toam "successfully pass[ing] a

medical and/or drug screen before [his] first day of employment." (Id.) Furthermore, the Offer

Letter contained the following disclaimer:

[P]lease note that employment with Verizon is considered to be employment at will, and that this letter does not represent an employment contract, which means that either you or Verizon can terminate your employment at any time, for any reason, and with or without notice.

(Id.)  Toam signed the Offer Letter at the bottom under the words, "Signature to confirm your understanding and acceptance." (Id.); (Pl. Dep. at 45:3-46:12.)

After accepting the conditional offer, Verizon, through a nurse employed by Health Resources Corporation, a third-party medical testing company, conducted a telephonic medical interview of Toam. (*See* Defendant's Exhibit 1, Questionnaire, Pl. Dep. Ex. E) During this interview, Toam said that he was a diabetic and ordered his own insulin, but had no doctor.[2] ( Pl. Dep. at 57:23-58:2, 59:15-23.) Thus, the Health Resources nurse required Toam to provide a doctor's note along with the results of an "A1C" test, (*see id*. at 61:6-9); (Defendant's Exhibit 1, Questionnaire, Pl. Dep. Ex. E), which measures a person's average blood sugar level over a three-month period. (*See* Affidavit of Rukhsana Sadiqali, M.D. at ¶ 5(b)).

On March 21, 2005, Toam faxed Health Resources a printout of the results of the A1C test performed by a laboratory chosen by Toam's doctor. (*See* Defendant's Exhibit 1, A1C Printout, Pl. Dep. Ex. F.) Rukhsana Sadiqali, M.D., the Health Resources physician who reviewed Toam's medical screen, saw that the printout indicated that Toam's A1C level was 11.5, while the "Normal Range" for results in that laboratory was from 4.0 to 5.0. (Sadiqali Aff. at ¶¶ 6-7); (*see* Defendant's Exhibit 1, A1C Printout, Pl. Dep. Ex. F) (*id*., Pl.'s Dep. at 64:1-25.)

On the same page as the A1C, Toam faxed Health Resources a note from his doctor,

---

[2] During this interview, Toam mentioned no residual effects from his diabetes. (See Defendant's Exhibit 1, Questionnaire, Pl. Dep. Ex. E.).

Cheryl Hess, M.D., stating that "Patient has performed duties in past. He may perform duties now if he meets Verizon medical guidelines." (*See* Defendant's Exhibit 1, A1C Printout, Pl. Dep. Ex. F); (*id.*, Pl. Dep. at 72:14-25.) Later, on March 25, 2005, Toam submitted a second doctor's note to Health Resources, stating that

> Gary has a h[istory] of [high] FBS [fasting blood sugar and] a documented Glyco A1C 11.5 on 3-14-05[.] FBS –in office- on 3-25-05 is 88. Patient has adapted a plan to control blood sugars (freq. test / diet / medical office visits).

(*See* Defendant's Exhibit 1, Doctor's Note, Pl. Dep. Ex. I.)

After reviewing all of this information, Dr. Sadiqali concluded that  Toam's Diabetes was uncontrolled and that it would, therefore, be unsafe for him to perform safety sensitive functions as a Cable Splicer. (Sadiqali Aff. at ¶ 12.) Thus, she decided not to give Toam medical clearance. (*See id.*) In making that decision, Dr. Sadiqali did not question whether Toam had performed the cable splicer duties in question in the past or whether he could still perform them. (*See id.*) Instead, her determination was based solely upon her opinion regarding the degree of medical risk involved with Toam's performance of the safety sensitive functions of Verizon's cable splicer position. (*See id.*)

On about March 25, 2005, Health Resources informed Verizon's staffing specialist, Mr. Kent Buschman, that Toam was not recommended for the term cable splicer position. (*See id.* at ¶ 13); ( Buschman Aff. at ¶ 8.) In sole reliance upon Health Resources' determination, Mr. Buschman then telephoned Toam and informed him that he had failed his medical screen and, therefore, would not be employed as a Verizon term cable splicer. (Buschman Aff. at ¶¶ 8-9.)

Toam then filed discrimination charges with the Equal Employment Opportunity Commission followed by the Complaint in this lawsuit.

In support of its motion for summary judgment, Verizon first argues that Toam's ADA

claim should be dismissed because there is no evidence that Verizon regarded Toam as having a

disability.

It is undisputed that Toam has diabetes, which is a "physical impairment" under ADA

jurisprudence. However, Seventh Circuit law is clear that "'diabetic status, per se, is not

sufficient to qualify as a disability.'" *Branham v. Snow* , 392 F.3d 896, 903 (internal citation

omitted). The Seventh Circuit recently summarized plaintiffs' burden of proof on this element as

follows:

> To establish disability discrimination, [the plaintiff] must show that . . . he is
> qualified to perform the essential functions of the job, either with or without a
> reasonable accommodation, and that he suffered from an adverse employment
> action because of his disability. . . . In order to establish his prima facie case that
> he is disabled, [the plaintiff] can show either (1) that he has a physical or mental
> impairment that substantially limits him in one or more major life activities;
> (2) that he has a record of such an impairment; or (3) that the employer regarded
> him as having such an impairment. 42 U.S.C. § 12102(2). If his condition does
> not meet one of these categories even if [the adverse employment action was]
> because of some medical condition, he is not disabled within the meaning of the
> Act. The ADA is not a general protection for medically afflicted persons.

*Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). In this case, Toam

relies solely upon the "regarded as" theory.[3] (*See* Compl., ECF No. 1 at ¶ 4) (basing ADA claim

solely upon the allegation that Verizon regarded Toam as disabled).

Under Seventh Circuit precedent, Toam bears the burden of proving that he is disabled

under the "regarded as" prong of the ADA "'by showing that either: 1) the employer mistakenly

---

[3]  Toam admits that diabetes does not actually limit im in any major life activity.  In his
deposition, Toam testified that diabetes does not limit his "ability to work" or his "ability to do
anything" else and that he does not have to do anything to overcome his diabetes. (See Exhibit 1,
Toam Dep. at 11-12).  Moreover, there is no evidence and Toam has never alleged that any
record exists that states that Toam is substantially limited by diabetes in any major life activity.

believes the employee has a physical impairment that substantially limits a major life activity; or

2) the employer mistakenly believes that an actual, non-limiting impairment substantially limits a

major life activity.'" *Branham*, 392 F.3d at 904; *Nese*, 405 F.3d at 641 (internal citation

omitted). "'In other words, the employer 'must believe either that one has a substantially limiting

impairment that one does not have or that one has a substantially limiting impairment when, in

fact, the impairment is not so limiting.'" *Nese*, 405 F.3d at 641 (internal citation omitted).

      Verizon contends that Toam has no evidence to support either of these two propositions.

Verizon argues that  Toam cannot show that Verizon mistakenly believed he had a "substantially

limiting impairment" because, as is discussed above, diabetes, per se, is not a "substantially

limiting impairment." *See Branham*, 392 F.3d at 903. Thus, it is not enough to show that Verizon

knew Toam had diabetes. *See id.*  Verizon further argues that Toam cannot show that Verizon

mistakenly believed that Toam's diabetes substantially limited him in a major life activity because

there is absolutely no evidence that Verizon held that belief. The evidence shows only that

Verizon's medical screen provider, Health Resources, concluded that based upon the information

Toam and his doctor had provided, it would not be safe for Toam to perform certain term cable

splicer functions. (Sadiqali Aff. at ¶ 12.) Verizon maintains that this evidence is insufficient as a

matter of law.

      Evidence that an employer or its medical provider believes that the risk involved in a

person's performance of the duties of a particular job is too great does not constitute evidence

that the employer believes that person is substantially limited in a major life activity. *See*

*Branham*, 392 F.3d at 904 (the law is "clear" that a plaintiff cannot avoid summary judgment by

presenting evidence that the employer merely believed the plaintiff could not "perform a

particular

job"). Instead, a plaintiff claiming to have been regarded as substantially limited in the major

life activity of working "must demonstrate that 'she was significantly restricted in the ability to

perform either a class of jobs or a broad range of jobs in various classes as compared to the

average person having comparable training, skills and abilities.'" *Stein v. Ashcroft*, 284 F.3d 721,

725 (7th Cir. 2002) (internal citation omitted). In other words, the plaintiff must demonstrate

that the employer regarded "'the impairment [as] substantially limit[ing] employment generally.'"

*See id.* (internal citation omitted).

Verizon argues that Toam cannot make this showing. In his deposition, Toam admitted

that he had no basis upon which to allege that Verizon believed he could not do the work of a

term cable splicer, (Pl. Dep. at 135:7-136:1), or the work of any other job for that matter. (*See id.*

at 131:25-132:6.) Moreover, Toam does not contest the fact that, though Verizon believed he was

physically able perform as a term cable splicer, Verizon decided not to hire him because of Dr.

Sadiqali's conclusion regarding the medical and safety risks involved. (Pl. Dep. at 136:6-23);

(Sadiqali Aff. at ¶ 12.) Instead, Toam only contests the *basis* for Dr. Sadiqali's conclusion. (Pl.

Dep. at 136:12-23) (admitting that Verizon might have accepted Health Resources' conclusion

regarding medical risk, but testifying that Health Resources' conclusion was wrong). However,

Toam cannot avoid summary judgment by contesting Dr. Sadiqali's conclusion. *See Branham*,

392 F.3d at 904-908.

Verizon contends that the Seventh Circuit's decision in *Branham* is directly on point and is

controlling. In that case, the plaintiff, Branham, was an IRS agent with Type 1 diabetes and had

been "*tentative[ly] select[ed]*" by the IRS for a promotion to a criminal investigator position. *Id*.

at 900 (emphasis in original). Branham's selection, however, was contingent upon his successful completion of a medical examination conducted by an IRS doctor. *Id*. Though Branham's own doctor had concluded that Branham could perform the duties of a criminal investigator, *id*. at 900 n.2, the IRS doctor concluded that allowing Branham to perform the essential functions of a criminal investigator would present an unacceptably high risk to the safety of Branham and others. *Id*. at 900. Accordingly, the IRS informed Branham that he would not receive medical clearance and refused to promote him to the criminal investigator position. *Id*.

Branham claimed coverage under the ADA as "an individual with a disability" based upon two theories: (1) that his diabetes substantially limited a major life activity and (2) that the IRS regarded him as having a disability. *See Branham*, 392 F.3d at 901. The IRS contested both theories, and the district court granted summary judgment to the IRS on both theories. *Id*. On appeal, in addition to arguing that the district court's ruling was correct, the IRS claimed that, even if Branham was an individual with a disability, he was not "otherwise qualified" for the criminal investigator position because he "pose[d] a direct threat to the health or safety of others." *Id.* at 904. Based upon conflicting medical evidence, the Seventh Circuit held that there was a genuine issue of material fact regarding (1) whether Branham's diabetes substantially limited a major life activity and (2) whether the IRS was justified in concluding that Branham posed an unacceptable safety risk as a criminal investigator. *Id.* at 904 and 907. However, despite the existence of conflicting medical evidence regarding his ability to safely perform the duties of a criminal investigator, the Court affirmed summary judgment on Branham's claim that he was "regarded as" disabled because "there [wa]s no evidence that the IRS mistakenly believed that Mr. Branham's diabetes substantially limited him in one or more

major life activities." *Id*. at 904.

Verizon claims that the undisputed material facts of this case are identical to those in *Branham*. As in *Branham*, Toam's job offer was contingent upon Toam's successful completion of the employer's (Verizon's) medical screen. Moreover, as in *Branham*, the employer's doctor refused to give Toam medical clearance based upon the doctor's opinion that it was too risky to employ Toam in the position at issue despite Toam's doctor's conclusion that Toam could do the work. Most importantly, however, as in *Branham*, no evidence exists that Verizon believed Toam was substantially limited in any major life activity. Therefore, Verizon argues that this court should follow *Branham* and grant Verizon summary judgment on Toam's claim that he was regarded as disabled.[4]

In response to the motion for summary judgment, Toam, for the first time, claims that his diabetes substantially limits him in the major life activity of eating.  However, up to this point, Toam claimed that his diabetes did not limit him in any way.  (See Toam Dep. at 11-12.)  Verizon states that Toam's new theory of the case is untimely and also fails as a matter of law because it is not supported by admissible evidence, much less any "objective medical findings" as is required. See Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454-55 (7th Cir. 1995)(holding that the plaintiff failed to prove that his impairment rose to the level of a disability because the plaintiff presented "no objective medical findings" to support that allegation).

_____

[4] As is illustrated in Branham, in deciding whether Toam's "regarded as" disability claim can survive summary judgment, the court need not determine whether Dr. Sadiqali's medical determination was sound.  That issues bears on the question of whether Toam was "otherwise qualified" for the term cable splicer position, not on whether Verizon regarded Toam as having a disability.  Though the evidence supports Dr. Sadiqali's determination regarding medical and safety risks and, therefore, shows that Toam was not "otherwise qualified" for the term cable splicer position, Verizon has not moved for summary judgment on that issue.

To prove that an impairment substantially limits a major life activity, Toam must present admissible evidence regarding (1) the nature and severity of the impairment, (2) the duration of the impairment, and (3) the permanent or long-term impact of the impairment. 29 C.F.R. § 1630.2(j). Verizon points out that Toam has failed to present any such evidence in opposition to Verizon's motion for summary judgment. Though he provides an affidavit from his treating physician regarding other issues, (*see* Affidavit of Cheryl Hess, M.D., Response Ex. 7, ECF No. 17), the only evidence Toam offers in support of his contention that diabetes substantially limited his major life activity of eating is his own self-serving affidavit and deposition testimony as well as certain hearsay documents referenced therein. For the reasons stated in Verizon's separately-filed motions to strike, (*see* ECF Nos. 18-22), Verizon claims that none of this purported evidence is admissible and, thus, Toam cannot rely upon it in opposition to Verizon's motion for summary judgment.

In its motion to strike portions of Toam's deposition Verizon states as follows. Toam is not a physician. In fact, the highest education Toam has completed is the eleventh grade of high school. (*See* Pl's Dep. at 9.) Toam has no specialized medical training and no specialized medical expertise. (*See id.* at 9-11.) Yet, in his Brief in Response to Defendant's Motion for Summary Judgment (hereinafter "Response"), Toam substantially relies upon opinions he expressed in his deposition regarding issues such as the physiological differences between different medical diagnoses and conditions, the quality and reliability and interpretation of medical tests, and the existence and import of statistical medical studies.

Verizon opines that the following allegations in Toam's Response are based upon inadmissible medical opinion testimony and should not be considered as evidence in opposition to

14

Verizon's motion for summary judgment:

> 21. . . . The normal A1C level of a diabetic is nine. [Toam Dep., pp. 68-69 & 80]
>
> * * *
>
> 39. Testing your blood sugar before and after meals and usually in the morning and evening gives you an accurate reading of your blood sugar every day. [Toam Dep., p. 67]
>
> * * *
>
> 42. Higher blood sugar [hyperglycemia] is not as bad as low blood sugar [hypoglycemia]. The latter can involve passing out. The former increases urination breaks and drinking a lot of water to flush the sugar. The high, above-average A1C level only increases the chance for long term complications, not passing out. [Toam Dep., p. 113]
>
> * * *
>
> 45. . . . the average level for American's [sic] with diabetes is 9, however the lowering of the A1C level by one can reduce complications, including heart attacks, by 30 to 35 percent. [Toam Dep., p. 69]
>
> * * *
>
> 47. Toam must check his blood sugar level at least five times a day and had been testing it up to twenty times a day. [Toam Dep., pp. 83-84]

(*See* Pl's Response at 2-8, ECF No. 17.)

Likewise, Toam's affidavit states:

> 5. Toam must check his blood sugar level at least five times a day . . .
>
> 6. Toam controls his blood sugar through the use of insulin at least twice a day and through diet and exercise.
>
> 7. The readings produced by Toam's blood sugar tests dictate the amount of insulin that he must administer, as well as, when and what type and amount of food he can eat. It is possible for Toam to skip or delay meals on occasion.
>
> 8. Although Toam never has experienced a severe hyperglycemic or hypoglycemic reaction, approximately once every week he does suffer from

15

minor reactions to low blood sugar, including at times trembling, light headedness and sweating. . . .

9. Toam's dietary intake is dictated by his diabetes, and [sic] must respond, with significant precision, to the daily blood sugar readings. Depending upon the level of his blood sugar, Toam may have to eat immediately, may have to wait to eat, or may have to eat certain types of food. Even after the mitigating measures of his treatment regimen, Toam is never free to eat whatever he pleases because he risks both mild and severe bodily reactions if he disregards his blood sugar readings. Toam must adjust his diet to compensate for any greater exertion, restrict the manner in which he eats as compared to the persons around him.

10. Although the risks of severe hypoglycemia can include incapacitation, confusion, coma and death, Toam . . . has never experienced physical or mental incapacitation as a result of mild hypoglycemia.

* * *

12. . . . That [fasting blood sugar ("FBS")] reading [of 88] is within the normal range for an FBS test and was an indicator of his blood sugar level on the date of the test. The normal range for FBS levels is 70 to 99. The normal A1C level of a diabetic is nine.

* * *

18. Toam can only regulate his blood sugar by modifying his eating habits in conjunction with insulin use, exercise and daily blood tests.

* * *

22. Further, the average level for American's [sic] with diabetes is 9, however, the lowering of the A1C level by one can reduce complications, including heart attacks, by 30 to 35 percent.

(*See* Toam Aff., Ex. 4 to Pl's Response) (ECF No. 17.)

Additionally, in his response to the motion for summary judgment Toam relies upon

Exhibits G and H to his deposition to support the following statements:

21. The normal A1C level of a diabetic is nine. [Toam Dep., Exhibit G]

* * *

16

38. There are limitations of the A1C test and it cannot replace daily selftesting of blood glucose. A1C tests do not measure your day-to-day control. Further, if you sent one sample of your blood to four different labs, you might get back four different test results – including one lab may have a result of 8 indicating that the blood glucose levels have been the near normal range and the second lab may have a test result of 9. Results depend on the way the lab does the test. [Toam Dep., Exhibit H]

* * *

45. Further, the average level for American's [sic] with diabetes is 9, however, the lowering of the A1C level by one can reduce complications, including heart attacks, by 30 to 35 percent. [Toam Dep., Exhibit G]

(*See* Pl's Response at 4-5 & 7-8, ECF No. 17.)

Exhibits G and H were referenced in Toam's deposition. Verizon argues, however, that neither document has been substantiated or authenticated and the identities and qualifications of the documents' authors are unknown. Verizon states that the authors of Exhibits G and H, whoever they are, have not been deposed in this matter and, thus, have not been subject to cross-examination regarding the statements made in Exhibits G and H. Finally, Verizon argues that it is clear on the face of Toam's response that Toam is attempting to use these statements to prove the truth of the matters asserted therein.

Verizon asserts that the above statements are hearsay under Fed. R. Evid. 801, and, none of the statements qualify for any of the hearsay exceptions listed in the Federal Rules of Evidence.

Thus, pursuant to Fed. R. Evid. 802, none of these statements are admissible. Moreover, pursuant to Fed. R. Civ. P. 56 and L.R. 56.1(b),  none of these statements can be relied upon in opposition to Verizon's Motion for Summary Judgment. Thus Verizon argues that this Court should strike all of the above statements and should not consider them as evidence in opposition

to Verizon's Motion for Summary Judgment.

Verizon argues that all of Toam's assertions and the deposition testimony upon which they are based are medical opinions and require specialized knowledge that Toam does not possess. Toam presumably has first-hand knowledge of what he does on a daily basis in regard to taking insulin, eating, and exercising. However, he clearly does not have first-hand or specialized knowledge regarding issues such as **(a)** the effectiveness of certain treatments for diabetes; **(b)** the interpretation and import of blood sugar tests; **(c)** the medical necessity of insulin and certain treatment plans; **(d)** the medical risks associated with certain medical conditions; **(e)** the types or causes of any incapacitations he may or may not have suffered in the past; or **(f)** the interpretation or meaning of medical statistics.

Thus, Verizon claims that pursuant to Fed. R. Evid. 701, none of these averments are admissible, and, pursuant to Fed. R. Civ. P. 56 and L.R. 56.1(b), none of these averments can be relied upon in opposition to Verizon's motion for summary judgment.

Toam, in response to the motions to strike, argues that the disputed testimony consists of admissible "observations" instead of inadmissible opinions. Toam claims that the source of his information was his own experience and from dealing with physicians and reviewing publications from the American Diabetes Association.   As Verizon points out however, if Toam's testimony is based upon statements made by others, it is inadmissible hearsay and should be excluded. Verizon further points out that even accepting Toam's allegation that he has tested his blood sugar since he was a teenager, this does not lead to the conclusion that Toam is qualified to opine regarding how he can obtain "accurate" blood sugar readings, much less how people, in general, can do so.

18

With respect to the admissibility of deposition Exhibits G and H, Toam argues that exhibits a party uses in a discovery deposition to question a deponent are automatically admissible against the party taking the deposition.[5]  Verizon notes that Toam fails to cite any support for this proposition and that no such support exists.

This court agrees with Verizon that the statements and exhibits contested in Verizon's motions to strike are inadmissible medical opinion testimony and/or inadmissible hearsay, for the reasons set forth above.

In support of his contention that Verizon perceived Toam as substantially limited in his ability to work, Toam first argues that all of the job duties listed in the Term Cable Splicer job description were "generic" and "rudimentary." (*See* Response at 17-18, ECF No. 17.) Toam's argument appears to be that, if Verizon believed he could not safely perform one or more of the Term Cable Splicer job duties, Verizon necessarily must have believed that Toam's diabetes substantially limited his ability to work "generally." *See Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002). However, as Verizon notes, this argument fails because absolutely no evidence exists to support the premise upon which it rests: that the inability to perform any of the Term Cable Splicer job duties at issue would preclude Toam from an entire "'class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *See id.*; *see* 29 C.F.R. § 1630.2(j)(3) (plaintiffs who rely on the major life activity of working must present evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., few,

---

[5]  Toam states that the source of the information set forth in his contested assertions were based upon an exhibit introduced by Verizon from a medical publication upon which Toam was questioned by defense counsel.

many, most) from which an individual would be excluded because of an impairment); *Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005) (the plaintiff "must present 'some evidence of the number and types of other jobs' in the geographic region, from which he would be excluded because of his perceived impairments") (internal citations omitted); *see also*, *Skorup v. Modern Door Corp*., 153 F.3d 512, 515 (7th Cir. 1998) (affirming summary judgment where the plaintiff failed to "set forth any evidence from which we can determine even general guideposts, such as whether her impairment foreclose[d] her from accepting a few, many, or most of the jobs in a particular class or in a broad range of classes.")

At best, the evidence on record shows only that Verizon's medical screen provider believed Toam could not safely perform one or more of the duties listed in the Term Cable Splicer job description. Toam cannot avoid summary judgment based upon such scant evidence.  *See Branham*, 392 F.3d at 904.

In addition to arguing that Verizon regarded him as substantially limited in his ability to work based upon Health Resources' determination of medical risk, Toam also argues that Verizon regarded him as substantially limited in his ability to work because it believed Toam could not obtain certification from the Department of Transportation ("DOT"). (*See* Response at 17-18, ECF No. 17.) This argument also lacks merit because there is no evidence in the record that, when it withdrew Toam's conditional offer, Verizon believed Toam could not obtain DOT certification.

In his Statement of Material Facts, Toam alleges that "Verizon's response was Toam was not eligible for the Cable Splicer (Term) position because of safety sensitive functions and he could not pass DOT certification . . .." (*See* Response at 5.) In addition to being

vague, this allegation is factually wrong.  There is no evidence that Verizon ever told anyone that it withdrew Toam's conditional offer because of DOT certification issues. Rather, the evidence clearly shows that Verizon has consistently given the same reason for why it actually withdrew Toam's conditional offer, i.e., "solely because . . . it would have been unsafe for [Toam] to perform safety sensitive functions required of a Cable Splicer." (*See* Pl. Dep. Ex. L at p. 3, Response Ex. 6, ECF No. 17); (*see* Pl. Dep. at 116:11-117:8 & 120:1-9) (indicating that Verizon merely told him he had failed to pass his medical screen and that he first learned of the DOT certification issue from his attorney). The evidence merely shows that, at the EEOC stage, several months after Verizon had withdrawn Toam's conditional offer, Verizon argued to the EEOC that, after Toam had already failed his medical screen, "it was later determined" that he would also not have been eligible for the Term Cable Splicer position because DOT regulations prevented him from obtaining certification. (*See* Sadiqali Aff. at Ex. C ) It is undisputed that DOT certification issues played absolutely no role in Toam's failure to pass his medical screen. (*See* Sadiqali Aff. at ¶¶ 16-17).

In addition to claiming that Verizon regarded him as being substantially limited in the major life activity of working, Toam claims, in one line of his Response, that Verizon regarded him as substantially limited in the major life activity of eating. (*See* Response at 18, ECF No. 17) ("Verizon knew Toam had an impairment that was substantially limiting in that . . . the major life activity of eating as set forth in <u>Branham</u>, <u>supra</u>, was involved.") However, Toam cites no evidence to support this contention. Moreover, even if Toam's assertion that Verizon knew "the major life activity of eating . . . was involved" were true, that would not prove that Verizon knew or mistakenly believed that Toam's diabetes substantially limited the major life activity of eating.

21

(*See id.*)

This court agrees that the Seventh Circuit's *Branham* decision is on-point and controlling. Therefore, summary judgment will be granted in favor of Verizon on Toam's "regarded as" ADA claim.

Verizon has also sought summary judgment on Toam's breach of contract claim. This contract claim is based upon Toam's allegation that Verizon breached an "enforceable contract," i.e., the Offer Letter. In support of summary judgment on this claim, Verizon contends that even if Toam had passed the required medical screen, his employment with Verizon was have been employment "at will," terminable at any time and for any reason.

Indiana recognizes two basic forms of employment: (1) employment for a definite or ascertainable term; and (2) employment at will. Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 717 (Ind. 1997). "If there is no definite or ascertainable term of employment, the employment is at-will and presumptively terminable at any time, with or without cause, by either party." Id. ("in Indiana, the presumption of at-will employment is strong"); see Remmers v. Remington Hotel Corp., 56 F. Supp.2d 1046, 1052 (S.D. Ind. 1999).

Verizon points out that in the present case, the Offer Letter did not contain a promise that Verizon would employ Toam for any specific or ascertainable duration. The only time period the Offer Letter mentions is a maximum time, "up to 36 months," not a minimum time Toam would be employed, and Toam admits that no Verizon representative ever told him his employment was guaranteed or that it would have any specific duration. (See Exhibit 1, Pl. Dep. at 47-49). In fact, Toam admits that he knew when he received the Offer Letter that, under Indiana law, Verizon could terminate him at any time and for any reason and that the Offer Letter did not change that

fact.  (See id. at 47).  Moreover, the Offer Letter specifically stated that it was not an employment contract and that "employment with Verizon is . . . employment at will . . ., which means that either you or Verizon can terminate your employment at any time, for any reason, with or without notice."  See Remmers, 56 f. Supp.2d at 1053 (granting summary judgment on breach of contract claim where offer letter stated that "nothing in this letter . . . is intended to be, nor should be construed as a contract of employment or guarantee that employment . . . will be continued for any period of time.")  Verizon thus argues that it cannot be disputed that Verizon never had a contractual duty to employ Toam for even one second.  Omosegbon v. Wells, 335 F.3d 668, 678 (7th cir. 2003)(a "fixed or ascertainable" duration term is an "essential element" to any enforceable employment contract under Indiana law), citing Orr, 689 N.E.2d at 717.

In response to the motion for summary judgment, Toam states that "Verizon indicated to Toam the job would last at least 24 months."   Toam has apparently abandoned his original theory that the Offer Letter constitutes a contract.  Verizon strongly disputes that Toam was ever told that he was guaranteed employment for at least 24 months.  The pertinent deposition testimony is as follows:

Q. This letter [the Offer Letter] doesn't say how long you will be employed, does it?

A. Um, up to 36 months.

Q. And then turning to page 2, Mr. Toam, and it does say in the third-to bottom paragraph, **your employment could be terminated for any time, for any reason, with or without notice; do you see that?**

A. **Well, that is a fact in Indiana anyway. They don't even have to have a reason to, to terminate you, so –**

Q. **You understood that when you applied?**

A. **Yes.**

23

Q. **You knew that this letter didn't make anything different than what you understood Indiana law required, correct?**
A. **True.**

Q. No one from Verizon ever told you your employment was guaranteed to last for a certain length of time, did they?

A. Just that it could be up to 36 months. But it would be, um, I, um, I believe that I was – we were all told that it would last between 24 and 36 months with at least 24-month period.

Q. Who told you that?

A. Or two years. They told us that on the date that we come in and took our first testing. They explained what the job was, how long it would last, and it was supposed to take at least the two-year period up to three years or 36-month period.

Q. That was if you weren't terminated beforehand.

A. Yeah.

Q. You understood that?

A. Yes.

Q. Someone from Verizon told you you would have a job with Verizon as long as you performed well? They never told you that, did they?

A. Nobody every actually come out and said that. I would assume, though, that if I am doing a good job, you know, I don't do anything wrong, that I am going to continue to, to be employed.

Q. But **you understood, you told me yourself, you knew under Indiana law, they could terminate you for any reason even if you were doing a good job, correct?**

A. **Yes.**

Q. And **no one from Verizon ever told you you could only be terminated for just cause, did they?**

A. Um, they actually, um – **not to my, you know, not that I recall.**

Q. And **you knew what the Indiana law was, correct?**

24

A. **As far as –**

Q. **Being terminated.**

A. A terminate.

Q. **Any time?**

A. **Yeah, at will.**

(*See* Pl. Dep. at 47-49) (emphasis added.)

Verizon argues that Toam's new theory fails because it is undisputed that when Toam accepted the Offer Letter, he understood that the offer was for employment at-will.  That is, even after hearing the alleged "indication" regarding 24 months, Toam knew that, under the Offer Letter, his employment was not guaranteed for any length of time.  Verizon further notes that Toam did not testify that Verizon told him that <u>his job</u> would last for 24 months, only that "the job" for which he was being interviewed might last that long.

This court agrees with Verizon that there is no evidence that Toam had a contract for employment with Verizon for any particular length of time.  It is clear that Verizon indicated to Toam only that they needed workers for the job for 24-36 months, not that he was specifically guaranteed employment for that length of time.  It is further clear that Toam fully understood that he was an employee-at-will, not a contract employee, and could be terminated for any reason or no reason, at any time.  Consequently, Verizon's motion for summary judgment will be granted on Toam's breach of contract claim.

<u>Conclusion</u>

Based on the foregoing, GTE North Incorporated a/k/a Verizon North Inc.'s motion for summary judgment is hereby GRANTED. Further, GTE North Incorporated a/k/a Verizon North Inc.'s motion to strike portions of Toam's deposition, motion to strike portions of Toam's affidavit, and motion to strike hearsay statements are all hereby GRANTED.

Entered: February 20, 2007.

<u>s/ William C.  Lee</u>
William C. Lee, Judge
United States District Court